## St. Louis Southwestern Railway Company *v.* Henson.

### Opinion delivered November 23, 1895.

LIABILITY OF MASTER—NEGLIGENCE OF FELLOW SERVANT.—A bridge foreman and a locomotive engineer though employed in different departments of the railway company's service, are fellow servants, so as to prevent a recovery by one for personal injuries caused by the other's negligence.

DAMAGES TO PROPERTY—DEGREE OF CARE.—An instruction, in an action against a railroad company by a bridge foreman for the loss in a collision of his property carried in a boarding car furnished by the company for its convenience, that the company is liable only for gross or reckless negligence is not prejudicial to the company.

RAILWAY COLLISION—DAMAGES RECOVERABLE.—Items for personal expenses and for a diamond ring cannot be recovered in an action by a bridge foreman for property lost through collision between the car furnished by the company for his transportation and another train.

Appeal from Craighead Circuit Court, Jonesboro, District.

JAMES E. RIDDICK, Judge.

*Sam H. West* and *J. C. Hawthorne* for appellant.

1. Appellant was not a bailee, nor a carrier of the property. 2 Kent, 558. Appellant could only be held for a willful destruction. 17 Mass. 479. But the loss was the result of the negligence of appellee's fellow servants, for which appellant is not liable. 46 Ark. 555; 51 *id.* 467; 10 S. W. 529. Nor was appellant liable for articles other than those necessary to be used in boarding cars, such as jewelry, merchandise, etc. 29 Minn. 160; 73 Ill. 348; 23 Am. St. 126. The verdict, as to the items of ring, gun, sewing machine, curtains, watches, and personal expenses, was excessive. 118 Mass. 275. The car was under plaintiff's control, and he was guilty of contributory negligence in permitting his fellow servants to violate the known rules of the company. 7 Hill, 47; 25 Wend. 459.

2. On the cross appeal, contend that the engineer and conductor were fellow servants of the plaintiff. 39 Ark. 17; 42 *id*, 417; 44 *id*. 527; 45 *id*. 319; 46 *id*. 388; *Ib*. 555; 51 *id*. 468; 54 *id*. 289; 58 *id*. 206; *Ib*. 217; 18 S. W. 219; 45 Mass. 49; 84 N. Y. 77; 81 *id*. 516; Whittaker, Smith, Neg. 139, and note; McKinney on Fellow Servants, sec. 18; 6 Cush. 75; 3 *id*. 270.

*E. F. Brown* for appellee.

Appellee was not a fellow servant with the conductor and engineer, and the question whether the conductor and engineer were not guilty of gross negligence were questions which should have been submitted to the jury. 84 N. Y. 77; McKinney on Fellow Servants, 310, 46 Ark. 477; 75 Mo. 653; 24 Oh. St. 654; 4 Cal. 30; 11 A. & E. R. Cases, 421; 4 Metc. 49; 45 Ill. 179;

6 A. & E. R. Cases, 149; 5 Ind. 339; 60 Ill. 171; 93 *id.* 302; 83 Ky. 129.

WOOD, J.  The plaintiff seeks to recover for injuries to person and for loss of property which he says were caused by defendant's negligence.  Defendant admitted the negligence, but says it was the negligence of fellow servants; and, furthermore, as to the loss of property, that defendant was in no sense plaintiff's bailee, and in no sense liable.

The plaintiff was foreman of a bridge and building gang, whose business was to repair bridges, culverts and trestles.  As a part of the necessary and customary equipment for such work, plaintiff was furnished with boarding cars, in which he lived, and boarded the crew of men working under him.  These cars, upon the order of the superintendent of bridge and building, were moved from place to place on defendant's road, wherever the occasion demanded.

Plaintiff and his property, the necessary appointments of a boarding car, and the men under him, were carried by the company to places of work without charge to plaintiff.  The rules of the compaay required boarding cars, when moving, to be attached to the caboose.  In this instance they were next to the engine.  But the plaintiff had no control over the placing of cars.  The conductor performed that duty.  A list of the property alleged to have been destroyed is attached to the complaint, and marked "Exhibit A."  On this list is a sewing machine, valued at forty-five dollars, two pairs of lace curtains and poles, valued at six dollars, one diamond ring, valued at one hundred and ten dollars, one shot gun, valued at fourteen dollars.  As a part of the same exhibit was also an account for personal expenses, amounting to eleven dollars and eighty-five cents, and a charge "for repairs on two watches, eighteen dollars."

The value of the articles listed, and the account for expenses and repairs, were shown to be as stated. The total amount of damages claimed was six hundred and six dollars and eighty-five cents.

Through the negligence of an engineer, one of defendant's trains collided with the train carrying plaintiff and his property, on a bridge over Crooked Bayou. Plaintiff's car was thrown into the bayou, and he sustained severe personal injuries, besides the loss of property above mentioned. The verdict was for six hundred and six dollars and twenty-four cents, damages for loss of property. Judgment was entered accordingly. Both parties have appealed.

The court instructed the jury as follows: "(1). The jury are instructed that, under the facts in the case, which are not disputed, the plaintiff was a fellow servant with the engineers and other employees of the defendant company in charge of the colliding trains, and he cannot recover for the personal injuries sustained through the negligence of such employees, and the jury will allow him nothing for such injuries. (2). Although the plaintiff cannot recover for his personal injuries, yet, if he was the owner of the property described in his complaint, and the jury find from the evidence that the same was destroyed through the gross or reckless negligence of the employees in charge of the defendant's trains, he can recover for the same, and the measure of damages will be the fair cash value of such property. (3). If the jury find that the property of the plaintiff was destroyed through the negligence of the employees of the defendant, they will find specially as to whether any portion of said property was unnecessary for the purpose of running the boarding car occupied by the plaintiff." The appellants at the time objected separately to the giving of instructions num-

bers two and three. The objections were overruled, and exceptions saved.

The plaintiff and the engineer, whose negligence caused the collision, were in different departments of the company's service. The former belonged to the bridge and building department, and the latter to the transportation department. Neither was under the control of the other. But the fact that they belonged to separate departments is of no consequence, further than it may tend to show whether or not the injury complained of was within the risks "ordinarily incident to the service undertaken." The danger of the collision of trains growing out of the negligence of engineers is open and palpable, and was reasonably to be anticipated by the plaintiff in the business in which he was engaged. It was certainly but a normal and natural risk for a bridge foreman to assume when he entered upon the service of the company; for these boarding cars in which he lived were constantly on the move, and they were pulled about over the road by engineers on the various trains. The plaintiff had every opportunity to, and doubtless did, know the manner and method of the movements of these trains. His work necessarily brought him in close contact with these engineers, and he knew that they manipulated the motive power. There was nothing of the master's duty in the work of running the engine. The doctrine announced by this court in *Triplett* v. *Railway Co.* 54 Ark. 289, applied to the facts of this record, determines the relation of the plaintiff and the defaulting engineer as that of fellow servants. That was a well considered case. The patient research and assiduous care of Judge Fletcher in that case has greatly lessened our labors in this. We would add nothing to that opinion, but, in addition to the authorities there cited, see the following: *Abend* v. *Terre Haute & Ind. Ry Co.* 17 Am. & Eng. R. Cases,

614, and authorities cited in note, p. 620; *N. Y. Cent.
etc. R. Co.* v. *Vick, id.* 609; *St. Louis, etc. R. Co.* v.
*Welch*, 10 S. W. 529, and authorities cited.

The railroad is not shown to have been negligent in
employing an incompetent engineer, nor in retaining
him after becoming aware of his incompetency. The
facts upon which the relation of fellow servants was
predicated were not controverted, and the court was
correct in its first instruction.

2. In instructing the jury that the defendant was
liable for the loss of plaintiff's property only in case of
"gross or reckless negligence," the court took the most
favorable view ·of the law and the evidence for the de-
fendant, and it cannot complain. The second instruc-
tion, *supra*, fixed the status of the company to the
plaintiff with reference to his property as that of a
gratuitous bailee, or what is termed in the law of bail-
ments as a "mandatary." Hutch. on Car. sec. 2; Schou-
ler on Bail, secs. 14–16. If the property of plaintiff was
carried solely for the carrier's benefit, then the carrier
was liable for *slight* negligence. If the plaintiff and
the defendant derived a reciprocal benefit from the car-
riage, the defendant carrier was liable for *ordinary*
negligence; if the transportation was exclusively for
the benefit of the plaintiff, then the defendant was
liable for gross negligence. Schouler's Bail. secs. 14–16
*supra*. The latter was the view adopted by the court.
The proof tended to show that the company usually
furnished boarding cars to their bridge foreman, and
carried what was necessary for the boarding of a bridge
crew, and that this was done for the convenience of the
company. So the court might have exacted a higher
degree of care than that announced.

*Degree of care exacted of master.*

But the carrier only undertook to carry such prop-
erty of the plaintiff as was necessary for the work in
which he was engaged. The company deemed it neces-

*For what damages a railway is re-sponsible.*

sary that he should board the gang of men working under him, and to that end they furnished him a car especially adapted for that purpose. This boarding car was a home on wheels. In it plaintiff and his men were expected to live, and to be ready at any moment to go whenever and wherever ordered. Without going over the items *seriatim*, it suffices to say that the jury were justified from the evidence in their finding as to what items were necessary for a boarding car, except the item for personal expenses. This had nothing to do with the property lost, and only had reference to the personal injury of plaintiff, for which, as we have shown, he could not recover. The diamond ring the jury found to be unnecessary for a boarding car, and in this they were correct. But the court overruled the motion of the defendant to have a remittitur entered for one hundred and ten dollars, the value of the ring, and overruled the motion for new trial. The cause must therefore be reversed and remanded for a new trial, unless the plaintiff shall, within thirty days, enter a remittitur for one hundred and twenty-one dollars and eighty-five cents. If the remittitur is entered, the judgment will be affirmed.

BUNN, C. J., and RIDDICK, J., did not participate, being disqualified.